**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SETH L. SULLIVAN,**

                              **Plaintiff,**


         **v.**                                    **1:03-CV-359**
                                                   **(GLS-RFT)**

**JOHN E. LAPLANTE,**

                              **Defendant.**
_____

**APPEARANCES:**              **OF COUNSEL:**

**FOR THE PLAINTIFF:**

Tobin, Dempf Law Firm         KEVIN A. LUIBRAND, ESQ.
33 Elk Street
Albany, NY 12207

**FOR THE DEFENDANT:**

HON. ELIOT SPITZER            CHRISTOPHER W. HALL
Attorney General              Assistant Attorney General
State of New York
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

### I. Introduction

Plaintiff Seth Sullivan brings this action under 42 U.S.C. § 1983, alleging that defendant John LaPlante violated his Fourth and Fourteenth Amendment rights,[1] and asserts claims of unlawful seizure/confinement, malicious prosecution, and malicious abuse of process under federal and New York state law. Pending under Rule 56 of the Federal Rules of Civil Procedure is LaPlante's motion for summary judgment dismissing Sullivan's complaint in its entirety. For the reasons that follow, the motion is GRANTED.

### II. Procedural Background

Sullivan filed his complaint on March 24, 2003, and LaPlante answered on May 19. *Dkt. Nos. 1, 5.* The subject motion was filed on October 22, 2004, and was fully briefed. *Dkt. Nos. 16, 17, 20-23.* Oral argument was heard on May 5, 2005, and decision was reserved. *Dkt. No. 24.* On May 19, with the court's permission, Sullivan filed a post-hearing sur-reply brief on a limited issue first raised in LaPlante's reply papers.

---

[1]While Sullivan also references the First Amendment in the Introduction to his complaint, he has made no identifiable claim for a violation of his rights thereunder.

*Dkt. No. 25.*

### III. **Facts**

Viewed in the light most favorable to Sullivan, the material facts are as follows. On May 28, 2001, Sullivan was assaulted by the drivers of a bus while he was directing traffic exiting the New Lebanon Speedway. *LaPlante's Local Rule 7.1 Statement of Material Facts (SMF), ¶¶ 1-4, Dkt. No. 17.* Sullivan reported the assault to LaPlante and his partner, Frank Cox, and wanted the bus drivers arrested. *Id. ¶ 5.* Cox followed up on Sullivan's criminal complaint based on the bus registration number and company name provided by Erin Tyer, Sullivan's fiancee. *SMF ¶ 7.* Approximately six months later, the bus drivers were charged for the assault on Sullivan. *Id. ¶ 8; Sullivan's Response Statement of Material Facts (RSMF), ¶ 8, Dkt. No. 21.* Other than being present on the day of the assault, LaPlante was not involved in the criminal case against the drivers. *SMF ¶ 9.* At a subsequent hearing, the case was disposed by the local Assistant District Attorney (ADA) via adjournment in contemplation of dismissal (ACOD). *SMF ¶ 10.* Cox had instructed Sullivan not to attend that hearing because, according to the former, nothing was going to happen. *RSMF ¶ 10.*

In a letter to the State Police dated February 26, 2002, Sullivan complained of LaPlante and Cox's handling of his case, including that: LaPlante had told him that if he chose to file a criminal case against the drivers he would never be able to file a civil case and that they would arrest no one if he chose to file a civil case; they had not taken any statements months after the incident; and Cox had told the ADA that Sullivan would be satisfied with the ACOD disposition. *Ex. E, Dkt. No. 17*. Sullivan's complaint was received by State Police Lt. Regan. It was treated as a service inquiry (instead of a personnel complaint) and was investigated by Sgt. Fenn, the commander of the New Lebanon substation where Cox and LaPlante worked. *SMF ¶¶ 13-16*.

Following Fenn's investigation, Regan responded to Sullivan's complaint by letter dated April 7, in which he essentially stated that Cox had performed a proper investigation, and that to the extent Sullivan's dissatisfaction was with the ACOD disposition, he could address the issue with the District Attorney's (DA) office. *SMF ¶¶ 23-25; Ex. I, Dkt. No. 17*. Regan's letter did not mention LaPlante. *SMF ¶ 26*. On April 9, 2002, two days after the date of the letter responding to Sullivan's complaint, Fenn contacted Louise Waters, New Lebanon Town Court Clerk, purportedly in

4

relation to the ACOD of the bus drivers' case, and was informed that the ADA had recommended ACOD to Town Justice Nevers due to the drivers' clean records and character references. *SMF ¶¶ 18-19.* Waters then told Fenn that Sullivan's name had come up during her review of old open cases showing that Sullivan had failed to appear in court on February 12, 1995, to pay a DWI fine of $590. *Id. ¶¶ 20-21.* Waters purportedly told Fenn that she would initiate a bench warrant for Sullivan and have the judge sign it.[2] *Id. ¶ 22.* The bench warrant, dated April 9, 2002, indicated that Sullivan had been arraigned on DWI charges, and had failed to appear for a scheduled court date of February 12, 1995. *Ex. K, Dkt. No. 17.* In large part, Sullivan claims that the bench warrant, issued following the police phone call to Waters two days after the investigation on Sullivan's complaint against Cox and LaPlante had concluded, indicates that the police call was intended to discover information from court records on Sullivan that could be used against him. *RSMF ¶¶ 20-22, 27.* However, there is no evidence suggesting that LaPlante had any involvement in the events leading to the issuance of the bench warrant. *SMF ¶ 29.*

_____

[2]Sullivan asserts that the town justice had no idea that the warrant had been issued until Sullivan was brought before him on a later date. *RSMF ¶ 30.*

Fenn assigned LaPlante[3] to execute the bench warrant after it was received[4] at the New Lebanon station.  *SMF ¶ 32.*   LaPlante arrested Sullivan on the morning of April 19, 2002.  *Id ¶ 35.*[5]  This was the first contact between Sullivan and LaPlante since a phone call made by LaPlante a week following Sullivan's assault in May 2001.  *Id. ¶ 36.*  While later processing Sullivan at the state police barracks, LaPlante filled out a criminal information charging him with bail jumping in the third degree under New York Penal Law (P.L.) § 215.55.  *Id. ¶ 39.*

Following processing, LaPlante took Sullivan to the Town Court for arraignment on the bench warrant and bail jumping charges.  *SMF ¶ 44.* During the arraignment, Town Justice Nevers told Sullivan that he had failed to pay his 1995 DWI fine.  *Id. ¶ 49.*  Sullivan claims that Justice Nevers was shocked at the new bail jumping charge and was ready to release him until LaPlante insisted that he be jailed.  *RSMF ¶¶ 45, 47-48.* The justice, who had previously contacted the ADA to obtain a bail

---

[3]The N.Y. State Police have no policy against a trooper executing a bench warrant against someone who has previously complained about that trooper.  *SMF ¶ 34.*

[4]The record is not clear on when the bench warrant was received.

[5]Of course, the parties' accounts about the circumstances of the arrest diverge. However, they are immaterial to the dispositive issues in this case, primarily because Sullivan does not pursue any claims based on the execution of the warrant.

recommendation,[6] set bail on the bail jumping charge at $2,500. *Id. ¶¶ 45, 47*. Sullivan was jailed during that morning until Tyer posted his bail. *Id. ¶46*. Tyer also paid Sullivan's DWI fine.[7] *Id. ¶ 50*.

In July 2002, Sullivan moved to dismiss the bail jumping charge on statute of limitations grounds, and Justice Nevers dismissed the case on September 12, 2002. *SMF ¶¶ 54-56; RSMF ¶ 55*. Other than filing the bail jumping information, LaPlante had no involvement in the prosecution of the charge. *SMF ¶ 57*.

### IV. <u>Discussion</u>

### A.    Standard of Review - Summary Judgment

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986);

---

[6]LaPlante claims that he had also called the ADA to make his own bail recommendation. *SMF ¶ 48*.

[7]Nevertheless, Sullivan claims that he had already paid his fine, even though the court records contained no receipt for such payment. He also points to 1995 Department of Motor Vehicles records showing that his DWI charge had been disposed of; that his licence had been suspended and subsequently reinstated upon completion of a program. *RSMF ¶ 49*.

*accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  It is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party.  *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir. 1999).  The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999).  "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *Dister v. Cont'l Group*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted).  Moreover, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  "While all reasonable ambiguities and inferences should be resolved against the moving party, those inferences must be supported by affirmative facts and must be based on relevant, admissible evidence."  *Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 515 (S.D.N.Y. 1997) (citing FED. R. CIV. P. 56(e)).  "As to materiality, the substantive law will identify which facts are material."  *Anderson*, 477 U.S. at 248.

**B.     Analysis**

*1.     Preliminary Issues*

LaPlante argues that Sullivan's Fourteenth Amendment due process claim is mislabeled since Constitutional claims of deprivation of liberty arising from false arrest and malicious prosecution fall within the ambit of the Fourth Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor,* 490 U.S. 386, 396 (1989).  However, LaPlante fails to recognize that in the Second Circuit, abuse of criminal process is actionable under § 1983 as a denial of procedural due process.  *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citation omitted).  Thus, LaPlante's request that Sullivan's Fourteenth Amendment due process claim be dismissed or subsumed in his Fourth Amendment claim is misplaced and is hereby rejected.

In addition, the parties' positions diverge on the proper focus of the inquiry.  LaPlante argues that Sullivan's § 1983 false arrest claim[8] should be dismissed because the latter's initial, and only, arrest was based on a valid bench warrant.  LaPlante's position is technically correct - an arrest

_____

[8]Sullivan does not assert a separate cause of action for false arrest under New York law. *See Pl.s' Opposition Brief, pp. 1, 16-18, Dkt. No. 22*.

9

made pursuant to a warrant is presumptively made with probable cause. *See Cea v. Ulster County*, 309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (citation omitted).  In this case, LaPlante made the arrest pursuant to the bench warrant issued by the Town Court, the validity of which Sullivan does not dispute.  It is similarly undisputed that LaPlante had no involvement in the issuance of the warrant.  However, LaPlante's position is misplaced.  Sullivan does not contest the validity of the bench warrant as a proper basis for probable cause to arrest him.  Instead, he unequivocally asserts that the charge of bail jumping subsequently brought by LaPlante, "above and beyond the original warrant ... is the subject matter of this action."  *Pl.s' Opp. Br. at 7, 13-15, Dkt. No. 22.*  Accordingly, judgment in LaPlante's favor on the initial arrest based on the bench warrant would be of no moment, as it is clear that Sullivan is not pursuing a claim under the above scenario.[9]

_____

[9]Sullivan identifies as the only "question" for purposes of section 1983 "whether the initiation and pursuit of additional bail jumping charges constituted a deprivation of [his] federally protected rights ...."  *Pl.'s Opp. Br. at 14.*  Thus, to the extent Sullivan does not argue that his initial arrest constituted false arrest, he may not have a viable false arrest claim based on the subsequent arraignment, as this claim would be viable as one for malicious prosecution, which necessarily involves a post-arraignment deprivation of liberty.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-17 (2d Cir. 1995).  In this case, it is undisputed that Sullivan was remanded to custody pending posting of bail, and Sullivan does not identify a separate seizure that might give grounds for his false arrest claim.  However, because neither party has sufficiently explored or briefed this issue, the court will assume that Sullivan has a viable cause of action for false imprisonment based on his hypothetical seizure by LaPlante while presenting the bail jumping charge to the town justice.  *See United States v. Mendenhall*, 446 U.S. 544,

With the above in mind, the court turns to the central and largely dispositive issue in this case: whether LaPlante, in April 2002, had probable cause to charge Sullivan, who had failed to appear in court in 1995, with bail jumping in the third degree - a misdemeanor offense subject to a two-year statute of limitations.  Finding that the statute of limitations is immaterial to the probable cause determination under the pertinent statute, this court concludes that probable cause to charge Sullivan with bail jumping was present.

2.  *Unlawful Seizure, Unlawful Imprisonment, Malicious Prosecution, and Probable Cause*

The parties agree that Sullivan's Fourth Amendment unlawful seizure and unlawful imprisonment claims correspond to the synonymous claims of "false arrest" or "false imprisonment" under New York law.  *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Under both § 1983 and New York law, a plaintiff must show that: (1) the officer intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not

---

553-54 (1980) (holding that, under standard Fourth Amendment analysis, a person is considered "seized" if he is unable to leave an officer's presence without permission); *see also Cea*, 309 F. Supp. 2d at 329 ("A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures ....")  (internal quotation marks, citation omitted) (alteration in original).

otherwise privileged. *See Weyant*, 101 F.3d at 853; *Cea*, 309 F. Supp. 2d at 329. "An arrest is 'otherwise privileged, if there was probable cause to arrest.'" *Cea*, 309 F. Supp. 2d at 329 (citation omitted). The existence of probable cause "constitutes justification and is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852.

The elements of malicious prosecution under § 1983 and New York law are likewise the same. *Cook*, 41 F.3d at 79. New York law "places a heavy burden on malicious prosecution plaintiffs ...." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000). To prevail on a malicious prosecution claim, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the proceeding was terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (citations omitted). As with false arrest, the existence of probable cause is a complete defense to a malicious prosecution claim. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003).

"Probable cause [to arrest] exists when an officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the

12

person to be arrested.'"  *Id.* at 76 (citation omitted).   Similarly, probable

cause to commence a criminal proceeding exists when a defendant has

"knowledge of facts, actual or apparent, strong enough to justify a

reasonable man in the belief that he has lawful grounds for prosecuting the

defendant in the manner complained of."  *Rounseville v. Zahl*, 13 F.3d 625,

629 (2d Cir. 1994).  "Whether probable cause exists depends upon the

reasonable conclusion to be drawn from the facts known to the ... officer at

the time ...."  *Devenpeck v. Alford*, --- U.S. ---, 125 S.Ct. 588, 593 (2004)

(citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  Moreover, "an ...

officer's state of mind (except for the facts that he knows) is irrelevant to

the existence of probable cause."  *Devenpeck*, --- U.S. at ---, 125 S.Ct. at

593-94 (citing *Whren v. United States*, 517 U.S. 806, 812-13, (1996)

(reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769 (2001) (per curiam)).

This is so because the Constitution's "concern with 'reasonableness' allows

certain actions to be taken in certain circumstances, *whatever* the

subjective intent ... [E]venhanded law enforcement is best achieved by the

application of objective standards ... rather than standards that depend

upon the subjective state of mind of the officer."  *Devenpeck*, --- U.S. at ---,

125 S.Ct. at 594 (quoting *Whren*, 517 U.S. at 814; *Horton v. California*, 496

U.S. 128, 138 (1990)) (italics in original) (internal quotation marks omitted).

In this case, LaPlante submits that in April 2002, he had probable cause to charge Sullivan with bail jumping under P.L. § 215.55.  He argues that based on the bench warrant, which showed that Sullivan had failed to appear as ordered by the court on February 12, 1995, or within 30 days thereafter, he reasonably believed that Sullivan had been released from custody and allowed to remain at liberty after being arraigned on DWI charges, that he was obligated to appear on that date, and that he had failed to do so within or after the statutory grace period.  Sullivan's chief contention is that LaPlante lacked probable cause to charge him with bail jumping subsequent to the arrest on the bench warrant and after Justice Nevers had disposed of that issue.  Specifically, he claims that there was no lawful basis for the misdemeanor charge, which he claims was completely "barred" by the applicable two-year statute of limitations.  Sullivan's arguments are misplaced.

New York Penal Law section 215.55 defines the relevant offense as follows:

> A person is guilty of bail jumping in the third degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon

14

condition that he will subsequently appear personally in connection with a criminal action or proceeding, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.[10]  Bail jumping in the third degree is a class A misdemeanor.

Under New York Criminal Procedure Law (C.P.L.) section 30.10(2)(c), a misdemeanor prosecution "must be commenced within two years" of the offense.

Addressing probable cause for a bail jumping charge, the Second Circuit has ruled that (1) the obligation to appear in court and (2) the subsequent failure to do so within the statutory 30-day period, "without more, satisf[ied] the requisites of New York's bail jumping statute."  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1155 (2d Cir. 1995).  The Circuit held that the above two factors provided "nearly conclusive evidence of ... guilt on the bail jumping charge" and supported, *as a matter of law*, probable cause to charge the individual with bail jumping.  *Id.* at 1156.  In this respect, the present case is indistinguishable from *Pinaud*: based on the bench warrant - which stated that Sullivan had been arraigned and scheduled to appear in court on DWI charges in 1995, and had

---

[10]The crime of bail jumping is complete, and the statute of limitations begins to run, after expiration of the thirty-day "grace period."  A defendant may also be found guilty if he does not voluntarily surrender and is apprehended within the 30 days.  *See People v. Shurn*, 418 N.Y.S.2d 442, 443 (2d Dep't 1979).

subsequently failed to appear - LaPlante knew facts sufficient to support probable cause to charge Sullivan with bail jumping.  Unlike the present case, however, *Pinaud* involved a bail jumping charge under P.L. § 215.57, which was brought within the applicable statute of limitations of 5 years under C.P.L. § 30.10(2)(b).  *See Pinaud*, 52 F.3d at 1155-56.

Here, Sullivan argues that C.P.L. § 30.10(2)(c) serves as a complete bar to the bail jumping charge brought on April 18, 2002, because: (1) bail-jumping is not a continuing offense for purposes of tolling the statute of limitations; and therefore (2) any prosecution for the misdemeanor could not have been brought beyond the applicable two-year statute of limitations.

LaPlante submits that he consistently charged individuals with bail jumping whenever he would execute bench warrants, and regardless of the time elapsed.  He further asserts that he thought that bail jumping is a continuing offense.  Recognizing the weakness of his position, LaPlante nevertheless claims that whether bail jumping is a continuing offense is not clearly established in New York.[11]  The court disagrees.

_____

[11]While LaPlante raises this issue in his argument on qualified immunity, proper resolution of the question of probable cause requires that it be addressed at this juncture.

The only New York case supporting the proposition that bail jumping is a continuing offense is *People v. Ingram*, 345 N.Y.S.2d 441 (N.Y. Crim. Ct. 1973).  However, subsequent authority in New York, including rulings by the First and Second Departments, holds to the contrary.  *See People v. Landy*, 510 N.Y.S.2d 190, 191 (2d Dep't 1986), *leave denied*, 69 N.Y.2d 882 (1987); *People v. Martinez*, 400 N.Y.S.2d 96 (1st Dep't 1977); *People v. Barnes*, 499 N.Y.S.2d 343 (N.Y. Sup. Ct. 1986); *People v. McAllister*, 352 N.Y.S.2d 360 (N.Y. Crim. Ct. 1974); *People ex rel. Barnes v. Warden*, 347 N.Y.S.2d 383 (N.Y. Sup. Ct. 1973).  Moreover, while this issue has not been decided by the New York Court of Appeals or by the Appellate Division, Third Department, it is nonetheless binding precedent.  "[T]he doctrine of *stare decisis* requires trial courts in [one] department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [the Appellate Division of the subject department] pronounces a contrary rule."  *Mountain View Coach Lines, Inc. v. Storms*, 476 N.Y.S.2d 918, 920 (2d Dep't 1984) (citations omitted); *see Stewart v. Volkswagen of Am., Inc.*, 584 N.Y.S.2d 886, 889 (2d Dep't 1992) (per curiam), *rev'd on other grounds*, 81 N.Y.2d 203 (1993).  Based on the above, it is clear that bail jumping is not a continuing offense in New York,

17

and therefore the statute of limitations for Sulllivan's 1995 offense had

expired in 1997.  However, LaPlante's purported subjective belief to the

contrary notwithstanding, the expiration of the statute of limitations is, as a

matter of law, of no moment to the issue of probable cause to charge

Sullivan with bail jumping in 2002.

Synthesized to a logical construct, the remaining part of Sullivan's

argument is that the statute of limitations is an element of the crime, and

therefore a prosecution may never be commenced outside the statute of

limitations as it would lack probable cause.  Other than his unpersuasive

interpretation of P.L. § 215.55 and C.P.L. § 30.10(2)(c), Sullivan has failed

to identify any authoritative support for his proposition that the statute of

limitations is an element of the statutory definition of the subject crime, or

that it must be considered by an officer at the time of the arrest or charge.[12]

_____

[12]In an analogous situation, the Eleventh Circuit has held that officers alleged to have presented charges  to the DA with the knowledge that there is a statute of limitations problem "should not be held personally liable for presenting this evidence to the district attorney who has the authority to make the ultimate decision whether to seek an indictment. Whether the statute of limitations bars a prosecution is a question of law. The officers properly deferred legal decisions to the district attorney." *Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991).  Similarly, in *Pickens v. Hollowell*, 59 F.3d 1203 (11th Cir. 1995), the Circuit ruled that officers are qualifiedly immune from liability for arresting an individual on arrest warrants where the underlying offense was subsequently dismissed on statute of limitations grounds, reasoning in part that police officers were not required to know and decide statute of limitations issues prior to arrest.  *Id.* at 1207-08. While in the present case, the information was filed by LaPlante, allegedly on his own initiative, both he and the town justice consulted the DA's office on the issue of bail.  Thus, it would not be unreasonable to infer that the charge was brought, at the least, with the DA's acquiescence.

Moreover, the court's independent review of relevant authority proves Sullivan's contention to be without merit.  The New York Court of Appeals has, in the past, held that '[u]nlike a Statute of Limitations in a civil case, such a statute in a criminal case creates a bar to prosecution and the time within which an offense is committed becomes a jurisdictional fact which the State must allege and prove." *People v. Hines*, 284 N.Y. 93, 113 (1940).  However, this holding in *Hines* has long since been overruled as contrary to established New York precedent.  *See People v. Kohut*, 30 N.Y.2d 183, 187-91 (1972).  Although *Kohut* addressed whether an indictment should allege a crime within the statute of limitations or facts under a tolling statute, its reasoning is applicable here.  The Court held that:

> essential allegations are generally determined by the statute defining the crime.  If a statute contains an exception, the indictment must allege that the crime is not within the exception.  But when the exception is found outside the statute, the exception generally is a matter for the defendant to raise ... by affirmative defense ... Limitations are imposed by independent statute.  They are neither exceptions nor provisos as categorized in the cases.  Hence, in an analogous, if not a stronger sense, they are matters of defense, and avoidance need not be alleged in the indictment ... [I]indictments are not insufficient merely because on the facts alleged the crime may be time-barred.

19

*Kohut*, 30 N.Y.2d at 187-88.[13]

Thus, *Kohut* clearly shows that, generally, the statute of limitations is a defense which need not be addressed in the charging instrument, and that even a charge that may appear time-barred on the face of the instrument is not defective for failure to allege facts tolling the limitations period.[14]  Thus, under *Kohut*, and considering the charging requirements for informations set forth in C.P.L. §§ 100.15 and 100.40, the statute of limitations is neither an element of the crime, nor a necessary component of probable cause, whether it be at the time of arrest or arraignment.

Sullivan's reliance on the history and general principles underlying statutes of limitations is similarly unavailing.  At common law, a prosecution could be commenced at any time.  *See People v. Gulston*, 695 N.Y.S.2d 888, 890 (N.Y. Sup. Ct. 1999) (citations omitted).  "Time limitations as to when ... a criminal action [can be commenced] are purely a legislative creation."  *Id.* (citing *People ex rel. Reibman v. Warden*, 275 N.Y.S. 59, 62

---

[13]*Kohut* also reaffirmed that under the former New York procedural regime, the government bore the burden to prove beyond reasonable doubt at trial that the statute of limitations had been tolled.  *Id.* at 191-92.  In this respect, it has been superceded by the CPL, which now allows the defendant to raise the issue of timeliness by pre-trial motion, on which he bears the burden of proof by preponderance of the evidence.  *See* C.P.L. §§ 210.20(1)(f), 210.45(6), 210.45(7); *see also* C.P.L. §§ 170.30(1)(d), 170.45.

[14]*See, e.g.*, C.P.L. § 30.10(4).

20

(3d Dep't 1934)).  As such, they are to be liberally construed in favor of a defendant.  *See People v. Seda*, 93 N.Y.2d 307, 311 (1999) (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)).  "Statutes of Limitation serve several purposes - they protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time; they minimize the danger of official punishment because of acts in the far-distant past; and they encourag[e] law enforcement officials promptly to investigate suspected criminal activity."  *Seda*, 93 N.Y.2d at 311 (quoting *Toussie*, 397 U.S. at 114-15) (internal quotation marks omitted, alteration in original).  However, notwithstanding their salutary purposes and favorable construction in favor of defendants, criminal statutes of limitations are not jurisdictional and can be waived.  *See People v. Mills*, 1 N.Y.3d 269, 274 (2003) (citations omitted); *see also People v. Dickson*, 519 N.Y.S.2d 419 (3d Dep't 1987).[15] Moreover, as already noted, the current CPL regime places the burden on the criminal defendant to raise and prove as a defense that his prosecution is barred by the statute of limitations.  See C.P.L. §§ 170.30(1)(d), 170.45;

---

[15]The principle that a statute of limitations is a waivable, non-jurisdictional affirmative defense is also well-settled in federal jurisprudence.  *See, e.g.*, *United States v. Spero*, 331 F.3d 57, 60 n.2 (2d Cir. 2004); *United States v. Walsh*, 700 F.2d 846, 855-56 (2d Cir. 1983).

*accord supra* note 13.  These considerations further, and almost completely, negate Sullivan's rationale.  Based on the above, the court concludes that the statute of limitations is not and cannot be an element of the crime at issue here, and accordingly is immaterial to the probable cause determination.

Thus, in this case, notwithstanding the parties' disputes about the attendant circumstances and LaPlante's motivation, probable cause can be determined as a matter of law because there is no dispute as to the relevant facts known by LaPlante at the time he charged Sullivan with bail jumping.  *See Evans v. City of N.Y.*, 308 F. Supp. 2d 316, 329 (S.D.N.Y. 2004).  Sullivan's initial arrest (not at issue here) occurred based on a valid bench warrant.  The facts contained in the warrant - that Sullivan was obligated to appear before the town court and had failed to do so within the statutory time, albeit outside the applicable statute of limitations, satisfied the statutory requirements of P.L. § 215.55.  Accordingly, they constituted sufficient probable cause for LaPlante to file an information charging Sullivan with this offense.[16]  Therefore, because the existence of probable

---

[16]Thus, it is of no moment that, as Sullivan claims, the justice was ready to release him after disposing of the bench warrant issue.  To the extent Sullivan attempts to use this disposition as further support for his lack of probable cause argument, it has no merit.  The dismissal of the underlying charge, even if done within the 30-day grace period, has no effect

cause is a complete defense to the claims of false arrest and malicious

prosecution, LaPlante's motion is GRANTED and these claims are

DISMISSED.[17]

### 3. Abuse of Process

Sullivan's claim for malicious abuse of process fails because he has

not established the requisite "collateral purpose" by LaPlante.

In New York, "a malicious abuse-of-process claim lies against a

defendant who (1) employs regularly issued legal process to compel

performance or forbearance of some act (2) with intent to do harm without

excuse of justification, and (3) in order to obtain a collateral objective that is

outside the legitimate ends of the process." *Cook*, 41 F.3d at 80 (citation

omitted).  As already noted, malicious abuse of criminal process also

supports liability under § 1983.  *See id.*; *Savino*, 331 F.3d at 76-77.  "The

gist of the action for abuse of process lies in the improper use of process

after it is issued.  To show that regularly issued process was perverted to

the accomplishment of an improper purpose is enough."  *Dean v.*

---

on the bail-jumping charge.  *See People v. Eiffel*, 81 N.Y.2d 480 (1993); *see also supra* note 10.

[17]The court does not reach the parties' arguments on the "favorable termination" and "malice" elements of the claim for malicious prosecution.

*Kochendorfer*, 237 N.Y. 384, 390 (1924).  However, "a malicious motive

alone ... does not give rise to a cause of action."  *Curiano v. Suozzi*, 63

N.Y.2d 113, 117 (1984); *see Chamberlain v. Lishansky*, 970 F. Supp. 118,

121-22 (N.D.N.Y. 1997); *see also Hauser v. Bartow*, 273 N.Y. 370, 374

(1937) (finding no abuse of process because "whatever may have been

respondent's motives, she used the process of the court for the purpose for

which the law created it.")   "Abuse, therefore, lies not in the synthesis of

proper purpose and suspect motive.  Improper motive is only abuse when

joined with improper purpose."  *Chamberlain*, 970 F. Supp. at 122.   As the

Second Circuit recently explained, "it is not sufficient for a plaintiff to allege

that the defendant[ was] seeking to retaliate against him by pursuing his

arrest and prosecution.  Instead, he must claim that [he] aimed to achieve a

collateral purpose beyond or in addition to his criminal prosecution."

*Savino*, 331 F.3d at 77.

Here, Sullivan's only claim is that LaPlante charged him with bail

jumping in retaliation for his complaining against him and as a way to show

him what happens to a "squeaky wheel in a small town [that] had to be

greased."   The above contentions show nothing more than improper

motive,[18] and Sullivan's inartful attempt to re-cast them as a collateral

objective or improper purpose is unpersuasive.  Moreover, Sullivan has

failed to point to any facts tending to show that LaPlante had any

subsequent involvement in his prosecution, attempted to use the process

for any other objective or purpose, or had any subsequent contact with him.

Accordingly, based on the above, LaPlante's motion on the issue of abuse

of process is GRANTED and the claim is DISMISSED.

### 4.  Qualified Immunity

Qualified immunity shields government officials "from liability for civil

damages insofar as their conduct [in performing discretionary functions]

does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known."  *Kerman v. City of N.Y.*,

374 F.3d 93, 108 (2d Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982)).  The Supreme Court has held that the "requisites of a

---

[18]In *Cook*, the Second Circuit held that retribution could constitute an improper purpose in the absence of probable cause for the underlying charges, and would thus be sufficient to support an abuse of process claim.  *Cook*, 41 F.3d at 80.  Sullivan does not raise this nuance in his argument.  Significantly, *Cook* is distinguishable from the present case, where probable cause to charge Sullivan existed.  *See, e.g.*, *Coleman v. City of N.Y.*, 49 Fed. Appx. 342, 345-46, 2002 WL 31398792, at *2 (2d Cir. Oct. 23, 2002) (unpublished table decision) (distinguishing *Cook* on the grounds of lack of probable cause).  Moreover, as already noted, *Savino* has since reiterated that under New York law, a malicious motive without more is insufficient to state a cause of action for abuse of process.  *Savino*, 331 F.3d at 77 (citing *inter alia Curiano*, 63 N.Y.2d at 117).

qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). This sequence requires that the court consider first whether "the officer's conduct violated a constitutional right." *Id.* at 201. Only after a violation is established is it appropriate for the court to consider whether the right was "clearly established" or if the officer's actions were objectively reasonable. *See id.*; *see also Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003). In this case, because LaPlante had probable cause to charge Sullivan with bail jumping, he did not violate his constitutional rights. Accordingly, and alternatively, LaPlante is qualifiedly immune from suit.

## V. Conclusion

After careful review of the record and parties' arguments before the court, and for the reasons stated, LaPlante's motion for summary judgment on Sullivan's § 1983 and state law claims is granted.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that LaPlante's motion is **GRANTED**; it is further

**ORDERED** that Sullivan's complaint be **DISMISSED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties.

**IT IS SO ORDERED.**

Dated:      August 16, 2005
            Albany, New York

United States District Court Judge